Good morning, Your Honors. Michael Dotz on behalf of the appellant, Supertech, Inc., a site-man company involved in software installations who entered into a contract with My Choice Software, the appellee in the case, over the internet. And then things went wrong and the lawsuit was filed alleging fraud and alleging breach. And the district court dismissed the complaint. Holding that My Choice, a California company, there was no personal jurisdiction in Siteband over My Choice. So we've appealed. There's basically two issues. There's a contract claim and then there's a tort claim, the fraud claim. The decision was made before the April of this year decision, an embankment decision in Briskin. And so Briskin kind of changes the landscape on the tort claim. The lower court in this case relied on the older version of Briskin before the embankment review. And the new Briskin, the new holding basically, if the holding basically is, if the interaction, interactive platform expressly aims its wrongful conduct toward a form state when its contents are its own choice and are not random, isolated, or fortuitous, then for the tort claim there is purposeful direction and there is personal jurisdiction. And that's what we have here. So as far as purposeful direction, this was actually parties that had had an ongoing relationship going back to 2019. They had had some prior contracts. There's one relatively substantial, $174,000. They knew each other. And so it was a purpose, it was not random that Supertech reached out to My Choice for this contract. It was also not isolated, because again there was a series of contracts between the parties. And it was not fortuitous. Fortuitous would be you go on the Amazon website and you purchase a program. Amazon has no clue who's purchasing the program. Here My Choice knew exactly who was purchasing it. This was a special software program that had complicated specifications. There was detailed email exchanges between the parties. There were Zoom conferences. And there was even a Zoom conference where the end user, a government agency, appeared in the Zoom conference dealing with the specifications. So My Choice knew exactly who it was dealing with and that it was in SIPAN. Is there a different standard and would it apply differently in the facts of this case depending whether we're talking about the tort or the contract claim? So there are technically two different terms that are used with the two different types of cases. But there's case law that basically says, most recent case law, it's really it's the same thing. Purposeful availment, purposeful direction. Ultimately what you're looking at is fundamental fairness under the due process clause. And is it fundamentally fair that somebody be hailed into that jurisdiction and have to defend the case there. And so whether you call it purposeful availment or purposeful direction, I think it's the same thing. And on the facts of this case, it amounts to, in your view, it comes to the same result? Yes, it does. Yes, it does. So I think the tort is pretty clear given the new ruling in Briskin. I think also there was jurisdiction on the contract claim, which is the purposeful availment standard. The lower court relied heavily on Davis. We spent a lot of time in the brief discussing Davis as not really being applicable. And the ultimate holding of the lower court was it is unreasonable to subject MCS to the burden of litigation in the CNMI based on supertex actions. But what supertex actions were, was reaching out to a party that contracted with before, negotiating a contract, working with them on the specifications, including the end user, and then the software is delivered that doesn't conform. But are you suggesting we look at the defendant's actions as opposed to the plaintiff's? I think, okay, I think that... You might be muddling which party we're supposed to be looking at when we're looking at purposeful availment, unless I'm misunderstanding you. I think you look at what the situation was between the parties. I don't think you look specifically... We're trying to figure out whether it's fair to hail somebody into court. And so we're looking, I think, at the defendant's contacts and actions. And under this, as you're right, quite a different standard now. Whether they expressly aim their wrongful conduct towards the forum state when its contacts are its own choice and not random, isolated, or fortuitous. That's Ford. That's straight from the Supreme Court precedent. Yes. So whose actions are we looking at? Let me just rephrase what I just said. Okay. MCS responded to the inquiry from SuperTek asking for a contract. MCS emailed and corresponded with SuperTek for the contract. MCS worked with SuperTek on the specifications. MCS joined in a Zoom call with the end-user CNMI government over the specifications. That's what MCS did. So they purposely availed themselves of the CNMI to enter into this fairly large contract for specialized software. So that's what MCS's conduct and purpose... You've answered my question. I appreciate your patience with it. I'm good for now. Okay. So I don't want to take too a lot of your time. I'll reserve a bit of what's left. But basically, SuperTek... MCS purposely availed itself. And Davis is distinguishable. We spent a lot of time distinguishing Davis. And given the inbox ruling in Briskin, which changes the standard for the tort, I think that the dismissal of the tort claim should be reversed and the matter remanded to the district court. All right. We'll let you save the bulk of your time. I'll reserve the bulk of my time. Yes. We'll hear from opposing counsel now, please. Good morning, your honors, and may it please the court. I'm going to jump straight into Briskin, which the court has directed us to focus on, and we've only got 10 minutes. So Mr. Dotz correctly summarized the holding in Briskin. An interactive form expressly aims its wrongful conduct. Well, SuperTek, throughout its briefings, both in the district court and in the 9th Circuit, has stressed that they didn't go through the website. In fact, the website had nothing to do with the alleged wrongful conduct in this case. And that's something the court should keep in mind. Does that make it harder or easier for you that they did not go through the website? Well, on the one hand, if they had gone through the website, the website had a forum selection clause for California, and the district court noted that in their decision. We don't have that here, and possibly that's why, this is just speculation, that's why SuperTek didn't go through it. But it doesn't make it harder for us in a sense. We still win, clearly, on the law, even under Briskin, that it's not through the website, and there's no contract between SuperTek and my choice that has a forum selection clause. So we do depend, in this case, on the law concerning exercise of specific personal jurisdiction. So why didn't your client purposely avail or purposely direct to the forum? Well, they didn't because they didn't reach out, and all the reaching out was from SuperTek. SuperTek's president, I think it was, called my choice, and that was how all of the interactions, all of the sales had occurred. There was no point where someone from my choice emailed or called SuperTek and said, hey, is there any other product that you guys need? We've sold you stuff in the past, anything else you need? No, they never reached out. It's not alleged they reached out that way. They never sent an email saying to SuperTek as a previous customer saying, we're running specials to the end of the year on Microsoft products. So they never reached out. It was always SuperTek. You're not suggesting that the contacts were random. I mean, at the end of the day, my choice knew that the software it sold to SuperTek was going to be used in the Northern Mariana Islands, right? Sure, but I would maintain that the contacts are random, isolated, and fortuitous because it's always SuperTek that's calling them. There it is random in that sense. There is nothing that my choice is doing to bring SuperTek in for another sale. They're not following up with emails. They're not following up with letters. So I would maintain that in that sense, it is random and fortuitous. They're not making another sale. There's nothing to indicate they're making another sale. You seem to be truncating the analysis and looking just to the initial contact. Who called whom first? What about Herbal Trans? Well, that's reaching out. Well, maybe that's one data point, right? But there was a course of conduct here that counsel has emphasized, and the court did not have our new Shopify opinion, but I think it did have our Herbal Trans opinion, where we said the conduct purposefully directed at the forum is the seller's action of accepting the order and causing the product to be delivered in the forum. There was more to that case than just sending a product into the forum, to be sure. But to follow up on Judge Desai's point, this wasn't just the one phone call. What about the course of conduct between the parties? You have to satisfy this test. Let me just start with that to make sure we're on the same page. Sure. You agree that we're looking for this, the question is whether they expressly aimed their conduct and we're looking for their own choice, not random, isolated, or fortuitous, as the buzzwords of the test. Do you agree with that? As part of it, there's a second point in that the courts have said, the Ninth Circuit has said, that there has to be something more than dependent operating a passive website accessible in the forum. Of a website. We've said that in Mavericks. We've said that in Mavericks when we're talking about a website, but you said at the top of the hour here that this order wasn't placed over the website. That's correct. It wasn't placed over the website. So we're looking at the other interactions that did happen, right? And I'm trying to figure out why, to get back to Judge Desai's question, why you think this was random, isolated, or fortuitous. Still, because it's simply my choice following up after they've been contacted by the buyer. And the buyer says, would you like to bid? Sure, I'll bid. And the buyer says, we need to have some discussions about this. So you have Zoom discussions. So what is the best case that you have, or cite some authority that I think supports the argument that you're making that everything that occurs after the initial contact, we should just completely ignore that. That plays no role in determining whether or not the contacts were sufficient. I think Pebble Beach is a good case. It says something has to be something other than a foreseeable effect in the forum state. And clearly, there's a foreseeable effect in the forum state. Yeah, I think that you concede, in response to my earlier question, that you knew the software, or my choice, that the software that it sold to SuperTech would be used in the forum, correct? Yes, yes, yes. It did know it would be used in the forum. But that doesn't, that should not create personal jurisdiction, specific personal jurisdiction in the forum. It's still, it's still that the seller has not reached out. The seller then is trying to be a good seller. And provide a product that the buyer is asking for. And the seller should not be penalized by having to go all the way out to Saipan to defend, just because the seller is following up and trying to provide the proper product. I think that's right. But it's all sort of the devil's in the details. And we look at all of what happened here. And I think the rule you're articulating would allow any entity contracting with a government to respond to a government request for a proposal, submit a bid, and then deny that they've availed themselves of the jurisdiction. Is that right? Well, here the bid, here the proposal did not come directly from the government. Here the proposal came from, came from SuperTech. Well, I'm giving you a hypothetical. Yes, the end user is the government, that's true. That's, I think your rule would knock out anybody responding to a government proposal. Well, I think that's right. I think that's, I think that is correct, Your Honor. And I don't think that the CNMI government should be treated differently than any private citizen within the CNMI. They're still, it's... Did your client engage in any advertising in CNMI? I don't believe so, Your Honor. I don't think that there was anything in the record about that. There were declarations from Mr. Rogers, from MyChoice, but I don't think there was any advertising in the CNMI. The website was, the website was accessible in the CNMI, we noticed. But maybe not, but maybe the advertisement not specifically directed to CNMI. Obviously, you'd done business previously with CNMI, including with this particular person. Yes, we had done business before. But again, when they reach out to us, and we haven't solicited further business from them, should we say, oh, geez, we don't want to sell anything to them, because then, you know, we may be stuck having to litigate in the CNMI. Yeah, so your basic argument is, depends on who initiates the contact. If you did not initiate the contact, you're not vulnerable to jurisdiction, because you're just, as it were, the recipient of the initial contact. And subsequent contact doesn't make any difference. Well, it's not just that there's the initial contact. So let's say that we had advertised, and that the record showed that we were advertising and reaching out specifically to the jurisdiction, and somebody responded to that. Then, even though we got the order in from the CNMI, now there's some evidence that we were targeting the CNMI. And I understand, I understand that the holding in Briskin is that differential targeting is not required. But it does go to the fact that my choice was not doing anything to try to get SuperTech or anyone else in the CNMI to come in and buy from them. Okay. Thank you, Your Honors. Thank you. Counsel? Let me start with herbal brands. I guess the rules in herbal brands are, one, the sale is in the regular course of business, which it was. MCS is in the regular business of selling or licensed software. And two, the defendant exercises some level of control over distribution. So that's, when SuperTech called, my choice could have said, we're not doing business in Saipan. You know, refer them to some other vendor, maybe in Australia or somewhere closer. But my choice took the call. And my choice negotiated the contract. They had a provision. They wanted a full payment up front. My client wired $844,000 to California. That's exercising control. And so, and they could, because they could have said, no, we're not going to do business with you. We don't want to do business in Saipan because we're afraid of getting sued in Saipan. They could have had the, they could have had the selection of law clause as part of the agreement, which they didn't have. But when SuperTech called, they answered. When SuperTech offered them a lucrative contract, they accepted. And when SuperTech worked with them, and they worked with SuperTech. Are we looking at SuperTech's actions? Yes. So, yeah. So when SuperTech called, they picked up the phone. They spoke with SuperTech. They negotiated with SuperTech over the specifications. They worked with SuperTech, and they received the wire transfer from the CNMI. And knowing that this product is going to the CNMI to be used by the government in the CNMI. So under Herbal Brands, we think there is personal jurisdiction. And then just, it's kind of the same on the earlier argument. In the en banc decision in Briskin, there was talk about if you have a website that's available to anyone. Well, websites advertise, and it's available on the CNMI. And you can see what is on the website. Unsolicited spam emails are not necessarily the way people do business. If a customer's looking for software, they would Google. They would find MCS's website. They could maybe buy software off the website. This software, they could not because it's specialized. And then they reach out. So MCS was inviting by having that website that was available in the CNMI for people in the CNMI, companies in the CNMI to do business with them. So any other advertising other than a ubiquitously available website? No, there's nothing in the record. No specific advertising. There was the course of dealing back to 2019 from 2022. And there's a prior contract. So these people knew each other. And they knew who to talk to and who to send emails. But no other advertising that I'm aware of. All right. Judge Desai, anything else? Judge Fletcher, I think we've got your argument, both of you. And we want to thank you for it. We'll take that case under advisement. We're going to take a 10-minute recess, and then we'll be back. Thank you, Your Honor.
judges: FLETCHER, CHRISTEN, DESAI